**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| M.A. on behalf of E.S., MA., A.T. on behalf of G.T., A.T., G.L. on behalf of A.O., G.L., H.M. on behalf of M.M., H.M., O.J. on behalf of O.D.J., O.J., A.E. on behalf of AJ.E., individually and on behalf of all others similarly situated, | : : : : : : : | Civil Action No. 01-3389 (SRC) **OPINION** |
| Plaintiffs, | : : | |
| v. | : : | |
| NEWARK PUBLIC SCHOOLS, NEW JERSEY DEPARTMENT OF EDUCATION, et al., | : : : : | |
| Defendants. | : : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion for class certification filed by

Plaintiffs, who are the parents of six students, all minors residing in Newark at the time this

action was commenced, who contend that their rights under the Individuals with Disabilities

Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"), as well as various implementing regulations

and other statutes, have been violated. The students are E.S., G.T., A.O., M.M., O.D.J. and

A.J.E. For purposes of clarity, the Court will refer to the individual Plaintiffs by the students'

initials, rather than the parents', and to the collective group of six students as "Plaintiffs."

Opposition has been filed separately by Defendant Newark Public Schools ("Newark School

District") and by Defendants New Jersey Department of Education, Lucille E. Davy, Vito A.

Gagliardi, Sr., Barbara Gantwerk, and Melinda Zangrillo (collectively, the "State Defendants").

Plaintiffs seek certification pursuant to Federal Rule of Civil Procedure 23(b)(2).  The Court has

considered the papers filed by the parties and has opted to rule on the motion without oral

argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the

Court will grant in part and deny in part the instant motion, certifying certain claims for class

treatment under Rule 23, and denying certification as to others.

I.   **BACKGROUND**

Plaintiffs filed this putative class action suit on or about July 17, 2001.  The Complaint

alleges claims for violation Plaintiffs' rights to a free appropriate public education ("FAPE")

under the IDEA as a result of Defendants' failure to identify and evaluate children potentially

eligible for special education services as required by statute as well as their failure to make

eligibility determinations and provide needed services in a timely manner.  Though the

Complaint filed in 2001 asserts twelve causes of action - eight under the IDEA, two under 42

U.S.C. § 1983, and two under the New Jersey Constitution and <u>Abbott v. Burke</u> - Plaintiffs have

withdrawn the Ninth through Twelfth Counts, which are the four non-IDEA causes of action.

The six named Plaintiffs bring these claims on their own behalf and on behalf of a class defined

as:

> all present and future children, ages three through twenty-one, and the
> parents of such children, residing within the Newark public school district,
> who are or may be eligible for special education and related services
> pursuant to IDEA and its federal and state implementing regulations and
> pursuant to New Jersey's special education statute, but have not been
> timely identified, located, referred, evaluated, or provided with such
> services. The class includes all children who are currently on "waiting

lists" for special education evaluations and all children who have been provided with special education and related services, but who did not receive such services in a timely manner, due to untimely identification, location, referral, evaluation, or implementation of initial services, and who have not been provided with "compensatory education" to compensate for this unlawful delay. [1]

(Compl. ¶ 27.)

At the time the Complaint was filed, that is, in July 2001, the six named Plaintiffs were, according to the Complaint, in the following situations:

E.S. was an eight-year-old child whose poor academic performance prompted his mother to request a special education evaluation early in the 1999-2000 school year. After an eligibility meeting in June 2000, it was determined that E.S. should receive an evaluation by the child study team ("CST") to see if he needed special education services. As of July 2001, no evaluation had been performed or even scheduled.

G.T. was a nine-year-old child with multiple physical and learning disabilities, including an abnormal neurological disorder and, per an independent physician's diagnosis, Attention Deficit Hyperactive Disorder ("ADHD"). She regularly failed to pay attention in class and continually failed major academic subjects. Beginning in September 2000, G.T.'s mother repeatedly requested a special education evaluation for her child. The Newark School District

---

[1] This is the class definition provided in the Complaint, by which the Court is guided. The Court notes the State Defendants' objection to the overly-broad class definition provided in Plaintiffs' proposed form of order on class certification submitted with their motion papers. That definition, as Defendants note, is overly broad and beyond the scope of this action in that it refers to all children whose "districts" - plural - were or will be inappropriately monitored by the State for various IDEA violations. Clearly, as the Complaint sets forth, the proposed class is limited to schoolchildren in the Newark School District.

scheduled a meeting for March 28, 2001, which did not take place.  Numerous meetings that were held throughout that spring failed to achieve a determination on whether an eligibility evaluation was warranted.  As of the filing of the Complaint, G.T. had not been evaluated.

A.O. was a nine-year-old with attention deficit disorder ("ADD"), auditory processing disorder, visual impairments, and language delays.  He had been receiving failing grades since 1996.  A physician at the University of Medicine and Dentistry of New Jersey had diagnosed him with borderline microcephaly, mental delay, hyperactivity and ADD. Despite repeated requests from his mother for an evaluation, and a November 1999 determination by his school's CST that an evaluation was warranted, A.O. was not evaluated for special education eligibility under early 2001.  In May 2001, the Newark School District determined that he was eligible for services, after findings of severe delays and impairments in basic areas of development as well as in language and mathematical skills.  The CST developed an individualized education plan ("IEP") for A.O.'s 2001-2002 school year. As of July 2001, A.O. had not yet received any special education services nor any information about compensatory education for the years he was deprived of special education services.

M.M. was an eight-year-old with ADD and a history of behavioral problems in school. After numerous requests by his mother for special education evaluations, the Newark School District evaluated him in December 2000 for special services eligibility.  (He did not, however, receive the neuropsychiatric assessment the school district itself felt was necessary.)  Though an IEP was developed in early 2001, M.M.'s mother was informed that no services would be provided until September 2001, unless M.M. transferred to another district school, where services could be provided in the then-current school year.  To assist her son, M.M.'s mother

independently retained the services of Huntington Learning Centers in June 2001, spending at least $9,000 for its services.

O.D.J. was a nine-year-old who had been identified for a special education evaluation by his Newark school district school as early as February 1997, during his kindergarten year. The school district began evaluating him in February 1998, more than two years after his father requested an evaluation. It determined him eligible for special education in June 1998 and developed an initial IEP for him that same month. At the time the Complaint was filed, O.D.J. remained eligible for and was receiving special education services but had not been provided with compensatory education for the time period during which he was deprived of an appropriate education.

A.J.E. was a nine-year-old with neurological impairments. The school district evaluated him two years after his mother made the request and subsequent to an attorney's intervention on his behalf. After the April 1998 eligibility conference, an IEP was developed, but the school district informed A.J.E.'s mother that it could not be implemented at his then-current school nor could A.J.E. transfer to a different school so late in the school year. Thus, A.J.E.'s IEP was not implemented until September 1999. At the time the Complaint was filed, A.J.E. remained eligible for and was receiving special education services but had not been provided with compensatory education for the time during which the school district failed to provide him with the services to which he was entitled.

Not surprisingly, in the eight years since the Complaint was filed, the named Plaintiffs' circumstances have changed. Clearly, they are no longer at the same point in their education as they were in 2001. Since then, two of them, O.D.J. and A.J.E., have graduated from high school

5

and are no longer students in the Newark School District.  Two others transferred out of the

district prior to graduating: M.M. began attending school in Kenilworth, New Jersey in

September 2001, and Newark School District records show that G.T. ceased to attend Barringer

High School in March 2009.  Only two of the named plaintiffs, A.O. and E.S., are currently

students in the Newark School District.

Plaintiffs first filed a motion for class certification one week after filing the Complaint.

They also moved for and obtained preliminary injunctions for two of the named plaintiffs,

mandating the continued provision and implementation of an IEP for E.S. and G.T. so long as

they remained eligible.  Defendants immediately moved to dismiss the Complaint on various

grounds.  Denying the motions to dismiss in February 2002, Judge Katherine Hayden held,

among other things, that Plaintiffs' claims were not barred for failure to exhaust administrative

remedies, reasoning that Plaintiffs' claims of a widespread systemic breakdown of the provision

of a FAPE could not be sufficiently addressed in administrative proceedings.[2]  Settlement

discussions began early on in the proceedings.  For case administration purposes, the first motion

for class certification was withdrawn, with approval from the Court to defer a further motion

while pursuing settlement discussions.  Indeed, the Court entered an order explicitly stating that

---

[2] The Newark School District has requested in its brief that the Court revisit the administrative exhaustion issue and dismiss the entire Complaint as barred for failure to exhaust. The Court will not entertain this request.  Apart from its cursory, improper presentation of the matter to the Court - not as a formal, fully briefed motion, but as a single paragraph buried in a brief in opposition to a class certification motion - the Newark School District fails to explain to the Court how Judge Hayden's opinion and order does not constitute the law of the case.  See Fagan v. City of Vineland, 22 F.3d 1283, 1290 (3d Cir. 1994) (holding that the "law of the case" doctrine recognizes that "as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case" and "operates . . . to limit reconsideration of the same issue.").

any motion for class certification would be deemed filed as of January 17, 2003, the deadline the

magistrate judge had set for re-instituting the class certification motion. Settlement negotiations

continued for years, with the parties on the brink of resolving their dispute.  After settlement

talks ultimately failed, Plaintiffs once again moved for class certification on June 22, 2009,

bringing the instant motion before the Court.


## II.    CLASS CERTIFICATION STANDARD UNDER RULE 23

Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") sets forth a two-pronged

standard for class certification.  To obtain class action certification, Plaintiffs must as a threshold

matter establish that all four prerequisites of Rule 23(a) are met.  Baby Neal v. Casey, 43 F.3d 48,

55 (3d Cir. 1994).  Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3)

typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a). In addition to satisfying

the requirements of Rule 23(a), Plaintiffs must establish that the class is maintainable under one

of the categories of Rule 23(b). In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527 (3d

Cir. 2004).  In this case, Plaintiffs seek certification under Rule 23(b)(2), which applies when the

putative class seeks declaratory or injunctive relief.  Beck v. Maximus, Inc., 457 F.3d 291, 301

(3d Cir. 2006).  Moreover, "[i]t has long been held that Rule 23 implicitly requires that

prospective plaintiffs propose a class definition that is readily ascertainable based on objective

criteria."  Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 438 (D.N.J. 2009).

Class certification is appropriate only "if the trial court is satisfied, after a rigorous

analysis, that the prerequisites of Rule 23 are met." In re Hydrogen Peroxide Antitrust Litig., 552

F.3d 305, 309 (3d Cir. 2008) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982))

(quotations omitted).  In deciding whether to certify a class, a Court must make a thorough examination of the factual and legal allegations involved in the complaint.  Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir. 2001) (citing Barnes v. Am. Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998)).  The Court's rigorous analysis under Rule 23 "may include a preliminary inquiry into the merits."  Hohider v. United Parcel Svc., Inc., 574 F.3d 169, 176 (3d Cir. 2009).  Indeed, the Court must resolve factual and legal disputes, even if they overlap with the merits, insofar as those disputes are relevant to class certification.  Hydrogen Peroxide, 552 F.3d at 307.  The Court may probe beyond the pleadings and need not afford plaintiffs' claims any deference.  Id. at 306 n.18; Newton, 259 F.3d at 166.  The Court, however, heeds the Supreme Court's statement that at bottom, the question on a Rule 23 motion for class certification is the question is not whether the plaintiffs will prevail on the merits, but rather whether the requirements of Rule 23 are met.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974).

If the Court finds that the action, or any portion thereof, warrants class certification, its order must "define the class and the class claims, issues, or defenses . . ."  Fed.R.Civ.P. 23(c)(1)(B); see also Wachtel v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 184 (3d Cir. 2006) (holding that rule "requires district courts to include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment.").  To fulfill this obligation, the Court "must scrutinize the Rule 23 certification requirements *in light of the*

*specific legal claims* at issue in the case and what adjudication of those claims would require.'" Rowe v. E.I. DuPont de Nemours and Co., No. 06-1810 (RMB), 2008 WL 5412912, at *3 (D.N.J. Dec. 23, 2008) (quoting Hohider v. United Parcel Svc., Inc., 243 F.R.D. 147, 186 (W.D.Pa. 2007), rev'd on other grounds by 574 F.3d 169 (3d Cir. 2009)) (emphasis in quotation).

## III.   THE IDEA CLAIMS

The Complaint at bar asserts eight causes of action premised on allegations that Defendants systemically failed to comply with the IDEA and with New Jersey's special education statute, and the statutes' respective implementing regulations. See 20 U.S.C. § 1400, et seq.; N.J.S.A. 18A:46-1, et seq.; 34 C.F.R. Part 300, et seq.; N.J.A.C. 6A:14-1.1, et seq.  The Court will refer to these claims generally as the "IDEA claims."  The IDEA claims touch upon various obligations imposed by the applicable statutes and regulations.   The Court will provide an overview of the obligations relevant to this action.

As a condition of receiving federal funds for special education services, the IDEA requires states and school districts to provide a free appropriate public education ("FAPE") to all children with disabilities, as defined by 20 U.S.C. § 1401.  20 U.S.C. § 1412(a).  "Educational instruction specially designed to meet the unique needs of the handicapped child," coupled with services "necessary to permit the child to 'benefit' from the instruction" constitute a FAPE. Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir. 1995).  For each child identified as eligible for special education, a written statement called an individualized education plan ("IEP") must be developed and the services included in that plan must be provided to the child.  20 U.S.C. §§ 1412(a)(4) and 1414(d)(2)(A); 34 C.F.R. §§ 300.340 - 300.350; N.J.A.C. 6A:14-3.

The IEP is the vehicle by which the child receives his or her FAPE.   S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 264 (3d Cir. 2003).  The IDEA also imposes upon states and school districts a continuing obligation to identify, locate and evaluate all students who are reasonably suspected of having a disability. 20 U.S.C. § 1412(a)(3);   P.P. v. West Chester Area Sch. Dist., — F.3d —, No. 08-2874, 2009 WL 3536372, at *9 (3d Cir. Nov. 2, 2009).  The school district is required to have in place "a practical method . . . to determine which children with disabilities are currently receiving needed special education and related services."  20 U.S.C. § 1412(a)(3).  This obligation is known as the "child find" duty.  Susan N., 70 F.3d at 756.  The IDEA and the implementing laws of New Jersey, moreover, impose various time constraints on the school district's performance of its child find obligations and ultimate implementation of an IEP for an eligible disabled child.  For example, when a child is referred for initial evaluation to determine eligibility under the IDEA, a meeting among the CST, the child's parent and the child's teacher must be convened within 20 days to determine whether an evaluation is warranted.  N.J.A.C. 6A:14-3.3(e).  Later in the process, once it has been determined that the child needs special services, a meeting to develop his or her IEP must be conducted within 30 days of that determination, and the resulting IEP must be implemented without delay.  34 C.F.R. § 300.301(c) and § 300 C.F.R. 300.343(b)(2).  New Jersey regulations specifically impose a 90-day time frame for the entire process to be completed, from parental consent to an initial evaluation to the ultimate implementation of the IEP, should the child be determined eligible for special education services.  N.J.A.C. 6A:14-3.4(e).  Finally, insofar as the IDEA claims at issue in this case are concerned, the IDEA guarantees students and their families various procedural safeguards, detailed in 20 U.S.C. § 1415, including "an opportunity to present

10

complaints with respect to any matter relating to the identification, evaluation, or educational

placement of the child, or the provision of a free appropriate public education to such child." 20

U.S.C. § 1415(b)(6).

Plaintiffs allege that the Newark School District, which is and was at all relevant times a

state operated school district, has systemically failed to locate and identify potentially eligible

disabled children and to conduct evaluations, make eligibility determinations, develop IEPs and

implement services in a timely manner, as required by the IDEA, New Jersey's special education

statute and related regulations.  (Compl., ¶¶ 203-207.)  The Complaint avers that the Newark

School District has maintained insufficient CST staff in its schools and has not fulfilled its

obligation to schedule meetings with parents who request an evaluation, to determine whether an

evaluation is warranted. (Id., ¶ 211-12.)  It further avers that rather than promptly conduct

evaluations of children identified as potentially eligible, the Newark School District engages in

the unlawful practices of placing children on waiting lists for evaluations and of advising parents

to obtain private special education evaluations.  (Id., ¶¶ 213-14.)   It also alleges that the State

Defendants have failed to monitor the Newark School District's implementation of special

education laws and that they have failed to maintain adequate complaint resolution procedures.

(Id., ¶ 210, 228-231.)  As a result, Plaintiffs maintain, Defendants have denied them and the

putative class of children in the Newark School District who have or may have disabilities with

the identification, evaluation, and where warranted, special education services to which they are

entitled under the IDEA. (Id., ¶¶ 216 - 231.)  The Complaint demands various remedies for these

IDEA violations.  Specifically, it seeks on behalf of the class a declaratory judgment that

Defendants have violated Plaintiffs' rights under federal and state law, a permanent injunction

11

ordering Defendants to perform their child find and IEP implementation obligations in a timely manner, and an award of compensatory education for all class members who have been deprived of an appropriate education.  The Complaint also seeks an award of compensatory damages for the named Plaintiffs only.

## IV. DISCUSSION

Defendants' opposition to class certification of the IDEA claims concentrate on two main arguments: (1) that the class fails to meet the threshold Rule 23(a) requirement of adequacy of representation and (2) that certification is not warranted under Rule 23(b)(2).  The Newark School District additionally opposes certification on grounds of lack of typicality.  Having considered the requirements of Rule 23, as set forth in the following discussion, the Court concludes that Plaintiffs have satisfied the prerequisites of Rule 23(a) with respect to their IDEA claims.   Pursuant to Rule 23(b), however, the class may be certified only as to liability on the IDEA claims pled in the Complaint's First through Fifth, Seventh and Eighth Causes of Action. and as to the claim for injunctive and declaratory relief for the violations asserted in those causes of action.  Plaintiffs' claims for compensatory education to remedy those alleged violations may not, however, be maintained on behalf of the class.  Nor will the Court grant certification with respect to the claim pled in the Sixth Cause of Action, which charges that Defendants violated the IDEA for failure to provide disabled eligible students with compensatory education.

### A.      Rule 23(a) Analysis

1.      <u>Numerosity</u>

Numerosity of the class has not been challenged, and the Court is satisfied that this requirement has been met.  Rule 23(a)(1) requires that the proposed class be so numerous that joinder is impracticable.  Fed.R.Civ.P. 23(a)(1).  Though the rules of civil procedure set no bright line denoting sufficient numerosity, the Third Circuit has held that "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001).   District courts following this guideline have generally found that classes numbering in the hundreds meet the numerosity requirements, as joinder of so many plaintiffs would be impracticable.  <u>McCoy v. Health Net, Inc.</u>, 569 F.Supp.2d 448, 455 (D.N.J. 2008); <u>NAACP v. N. Hudson Reg'l Fire & Rescue</u>, 255 F.R.D. 374, 381 (D.N.J. 2009).  In this case, which alleges systemic failure by the Newark School District and the State Defendants to identify and evaluate potentially disabled children and timely provide eligible students with needed special education services, it is easy to conclude that the proposed class - which includes present and future children residing in the district - far exceeds the 40-person guideline.  In fact, Plaintiffs submit a certification which estimates, based on school district documentation concerning students who may need special education services, that the number of students denied implementation of an IEP within the 90-day time frame in the two academic years preceding this motion is over 2,000.  (<u>See</u> Cert. of Ruth Lowenkron in Support of Plaintiffs' Motion for Class Certification, at ¶¶ 14-24.)  Joinder of such a large group of litigants would be impracticable, and thus the proposed class meets the numerosity prong of Rule 23(a).

2.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

Fed.R.Civ.P. 23(a)(2).  Regarding the easily met requirement of commonality, the Third Circuit

has held that it can be satisfied by a "single common issue" based on, for example, all class

members being subject to the same harm or defendants engaging in a common course of conduct

toward the plaintiff class.  Baby Neal, 43 F.3d at 56-57.  Thus, in Baby Neal, the Appeals Court

found that the proposed class of children in custody of the city department of human services,

who alleged systemic deficiencies by the city in its obligation to provide child care services,

easily met the commonality requirement, rejecting defendants' argument that the individualized

circumstances of the children frustrated any common question among them.  Id. at 57; see also

Upper Valley Ass'n for Handicapped Citizens v. Mills, 168 F.R.D. 167, 170 (D.Vt. 1996)

(finding commonality in a case concerning inadequate implementation of procedures mandated

by IDEA, reasoning that though each class member may present different factual circumstances,

all were subject to defendants' common conduct with regard to the procedures); Gaskin v.

Commonwealth of Pa., No. 94-4048, 1995 WL 355346, at *3 (E.D.Pa. June 12, 1995) (finding

commonality prong satisfied by class alleging that defendants had not complied with IDEA's

child find duty).

Likewise, in this action, where indeed no opposition to certification has been raised on

this ground, the class meets the commonality requirement.  The Complaint asserts that the entire

class of children residing in the Newark School District has been subject to Defendants' common

course of conduct, that is, their systemic deficiencies in identifying and evaluating children who

may reasonably be suspected of having a disability under the IDEA and providing special

education services to those eligible in the timely manner required by law.  Moreover, the action also presents common questions of law regarding Defendants' alleged violation of federal and state child find mandates, alleged deprivation of a FAPE to disabled students and alleged failure by the State Defendants to monitor the Newark School District.

3.     <u>Typicality</u>

This third prong of the Rule 23(a) analysis tends to merge with the concept of commonality.  <u>Falcon</u>, 457 U.S. at 157 n.13; <u>Baby Neal</u>, 43 F.3d at 56.   It is, however, a distinct requirement.  Typicality focuses on the sufficiency of the named plaintiff, whereas commonality evaluates the sufficiency of the class itself.  <u>Baby Neal</u>, 43 F.3d at 56 (citing <u>Hassine v. Jeffes</u>, 846 F.2d 169, 177 n.4 (3d Cir. 1988)).   To meet the typicality requirement, the proposed class representatives must show that their interests are aligned with those of the absent class members.  <u>Stewart</u>, 275 F.3d at 227.  If the named plaintiffs' claims "[arise] from the same event or practice or course of conduct that gives rise to the claims of the class members" and are "based on the same legal theory," the typicality requirement will be met, even if there are factual differences between the named plaintiffs' claims and those of the absent members.  <u>Baby Neal</u>, 43 F.3d at 58.

The Newark School District argues that the named plaintiffs fail the typicality requirement because four of them are not even currently enrolled in Newark schools and so their interests cannot be aligned with those of the absent class members, and because the other two's claims that they were denied a FAPE as a result of alleged delays in the provision of services depend on "individual permutations."  This challenge is unavailing.  As to the interests of the no-longer enrolled named plaintiffs', the Court addresses this concern in the section below relating

15

to adequacy.  As to the "individual permutations" that the Newark School District contends differentiate the currently enrolled named Plaintiffs' claims from the claims of the absent class members, the jurisprudence is clear that such factual differences in how the alleged systemic delay affected any particular student, including the named plaintiffs, does not defeat typicality.  It remains that their claims all derive from the same allegedly unlawful and systemic non-compliance with the IDEA's child find and IEP obligations.  20 U.S.C. § 1412(a)(3) and (4).

The Court finds that the claims of all six named plaintiffs are typical of those of the class. The claims all arise from the same course of conduct: Defendants' alleged systemic failures to locate, identify and evaluate children who may need special education services, to provide those services for those classified as disabled and to compensate disabled children for their deprivations of a FAPE due to the delay or complete non-provision.  The claims are based on the same legal theory; all plaintiffs seek a remedy for not receiving the timely services to which they are entitled under the IDEA, the New Jersey special education statute and federal and state regulations.

### 4.   Adequacy

To satisfy this threshold class certification requirement, two elements must be established: "(a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."  Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).  The burden falls on the party challenging class representation to prove inadequacy.  Wilson v. County of Gloucester, 256 F.R.D. 479, 487 (D.N.J. 2009) (citing Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 233 (D.N.J. 2005) and In re Prudential Ins. Co. of Am. Sales Practices Litig., 962

16

F.Supp. 450, 519 (D.N.J. 1997)).  In this case, Defendants have challenged the adequacy of the

named Plaintiffs on two grounds.  First, they have argued that Plaintiffs' pursuit of compensatory

damages and reimbursement on their own behalf and not on behalf of the class as a whole places

them in a position in which their own interests are antagonistic to those of the class.  Second,

they have argued the named Plaintiffs are inadequate representatives because, through changed

circumstances, these individuals' interest in this litigation and any relief it could afford has

lapsed.  Defendants maintain that because the named Plaintiffs have either received special

services and/or ceased to be enrolled at any school in the Newark School District in the time

since this suit was filed, they lack incentive to pursue classwide injunctive and declaratory relief,

if not lack standing altogether.  The Court addresses each challenge in turn.[3]

     First, as to the conflict that may be presented by the named plaintiffs' individual pursuit

of damages and reimbursement, the law itself nullifies a portion of this challenge.  Despite what

the Complaint may assert as the relief sought, it fails to state a cognizable claim for money

damages.  While the IDEA provides that the Court may fashion "appropriate" relief, 20 U.S.C. §

1415(i)(2)(C)(iii), Plaintiffs provide no authority indicating that compensatory damages are

available under the IDEA.[4]  Until recently, the Third Circuit had not announced whether it would

---

    [3]  The Court notes that Defendants have not challenged the adequacy of class counsel's
ability to conduct this litigation.  Indeed, the Court finds that the performance of class counsel
over the years this litigation has been pending has more than adequately demonstrated that
counsel can and will vigorously prosecute the class claims.  <u>New Directions Treatment Svcs. v.
City of Reading</u>, 490 F.3d 293, 313 (3d Cir. 2007).

    [4]  Plaintiffs cite the Third Circuit's opinion in <u>W.B. v. Matula</u>, 67 F.3d 484, 494 (3d Cir.
1995) in support of their assertion that money damages may be recovered directly under the
IDEA.  Matula, however, held that damages predicated on an IDEA violation may be recovered
under Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a) and under 42 U.S.C. § 1983.  The
Third Circuit has not reversed its position on the availability of a Section 504 claim to redress

consider appropriate relief under the IDEA to encompass compensatory damages.  Even then, the weight of authority on the question had concluded that damages are not recoverable under the IDEA.  See L.T. v. Mansfield Township Sch. Dist., No. 04-1381 (NLH), 2009 WL 737108, at *9 (D.N.J. Mar. 17, 2009) (holding that while Third Circuit has not spoken on whether compensatory damages may be recovered under the IDEA, all district courts in the circuit as well as the Court of Appeals for eight other circuits have held that they may not).  This Court now has clear guidance on the question.  The Third Circuit issued an opinion weeks ago holding that "compensatory and punitive damages are not an available remedy under the IDEA."  Chambers v. Sch. Dist. of Phila. Bd. of Educ., — F.3d — , No. 07-4790, 2009 WL 3948295, at *6 (3d Cir. Nov. 20, 2009).  Moreover, Plaintiffs concede, as they must, that they may not seek damages pursuant to 42 U.S.C. § 1983, as the Third Circuit has concluded that no cognizable § 1983 claim may be premised on a violation of one's rights under the IDEA.  A.W. v. Jersey City Public Sch., 486 F.3d 791, 799 (3d Cir. 2007).  Consistent with the jurisprudence on class certification, the Court must consider the merits of a claim insofar as they may relate to the Rule 23 analysis.  The Court concludes that Plaintiffs' inability, as a matter of law, to obtain compensatory damages under any legal theory asserted in the Complaint removes any possible impediment to the named Plaintiffs' adequacy of representation that may be presented by seeking damages on only their own behalf.

---

IDEA violations.  See generally A.W. v. Jersey City Public Sch., 486 F.3d 791 (reviewing Matula opinion and reversing it insofar as it sanctioned a Section 1983 claim to enforce IDEA rights); L.T. v. Mansfield Township Sch. Dist., No. 04-1381 (NLH), 2009 WL 737108, at *9 (D.N.J. Mar. 17, 2009) (holding that while Matula was overruled on other grounds, courts continue to abide by its holding that compensatory damages are available under the Rehabilitation Act). The Complaint at bar does not, however, assert a Section 504 claim.

Reimbursement, on the other hand, may be a monetary form of relief but does not constitute damages.  Sch. Comm. of Twp. of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 370-71 (1985).  It is an equitable remedy available under the IDEA and meant to reimburse the parents of a disabled child for their expenses in connection with a private school placement the parents unilaterally secure for their child, if a court ultimately determines that the private placement, rather than the district-provided one, is proper under the IDEA.  Id. at 369. The named Plaintiffs' pursuit of this relief for themselves, and not on behalf of the entire class, could create a situation in which the named plaintiffs sacrifice their fiduciary duties to pursue injunctive relief for the class zealously in order to meet their individual objectives of recouping expenses.   The adequacy prong of Rule 23(a) "seeks to uncover conflicts of interest between named parties and the class they seek to represent."  Warfarin Sodium, 391 F.3d at 532.  Named plaintiffs will fail this requirement if they lack "the ability and the incentive to represent the claims of the class vigorously."  Rowe, 2008 U.S. Dist. LEXIS 103528, at *22.  Because this Court finds that the discrepancy in the individual and class relief sought could create antagonism between class representative interests and class interests, and because the Plaintiffs have offered to withdraw their claim for reimbursement if it harms their adequacy of representation under Rule 23(a)(4), the Court will order the reimbursement claim withdrawn.

Second, the fact that the named Plaintiffs' circumstances have changed, albeit significantly, does not render them inadequate representatives in the instant action to vindicate IDEA rights on behalf of the proposed class.  The State Defendants argue that the named Plaintiffs lack incentive to pursue class claims for injunctive relief and compensatory education because they have each received the special education services they required and/or have ceased

to attend Newark schools.  The Newark School District similarly argues that the class representatives' interests are no longer aligned with those of the class and, moreover, that the four named plaintiffs who have left the district or graduated lack standing.  Plaintiffs argue, among other things, that they continue to have a stake in this action and that, moreover, the inherently transitory nature of their claims salvages the claims and preserves their ability to serve as adequate class representatives.

The Court agrees with Plaintiffs.  Plaintiffs' IDEA claims in this litigation fall squarely within the "inherently transitory" exception to Article III's requirement that parties have a live case or controversy to support jurisdiction.  Generally, a claim must be dismissed as moot if developments occurring during the course of litigation eliminate a plaintiff's personal stake in the outcome or deprive the court of the ability to grant the requested relief.  Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).  In Gerstein v. Pugh, however, the Supreme Court recognized that "some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's interest expires."  County of Riverside v. McLaughlin, 500 U.S. 44, 51-52 (1991) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 399 (1980)); Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975).  "In such situations, the dissipation of the named plaintiff's personal stake in the outcome will not deprive the Court of the power to hear the case."  Dittimus-Bey v. Taylor, 244 F.R.D. 284, 288 (D.N.J. 2007).  For actions involving such claims, which become moot prior to certification, the question is whether the named plaintiffs had a stake in the outcome at the time the complaint was filed, not at the time of certification.  Rosetti v. Shalala, 12 F.3d 1216, 1228 n.25 (3d Cir. 1993).  IDEA claims are without question inherently transitory.

In other words, an IDEA plaintiff's interest in rectifying the wrong complained of in the complaint - for example, the deprivation of a FAPE in a particular school year - often lapses by mere passage of time.  Indeed, in a typical challenge regarding whether a child has received a FAPE, as guaranteed by the IDEA, the school year or years at issue will have long since concluded by the time the dispute even enters the federal courthouse, much less reaches resolution.  See, e.g., Burlington, 471 U.S. at 370 (noting that the "ponderous" review process under IDEA typically takes years to complete and observing that "final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed.").  In other cases, an initial wrong committed in timely failing to identify or evaluate a disabled child, thus depriving her of a FAPE, cannot be erased, yet the child may be left without a real stake in pursuing court-ordered injunctive relief because the offending school district will have complied with its IDEA obligations, albeit belatedly, before the lawsuit can reach a disposition.  The fleeting nature of an IDEA grievance is quite pronounced in an action, such as the one at bar, in which the claims in large part concern the untimely delivery of services to which the named plaintiffs and the class they represent are entitled.  Defendants' provision of an evaluation, eligibility determination and IEP to a named Plaintiff post-filing of the complaint, or alternatively, their inability to do so because a named Plaintiff has graduated or aged out of the school system should not extinguish the class claims or render those Plaintiffs inadequate class representatives.  See, e.g., D.D. v. New York City Bd. of Educ., No. 03-2489 (DGT), 2004 U.S. Dist. LEXIS 5189, at*33 (E.D.N.Y. Mar. 30, 2004), vacated on other grounds by 465 F.3d 503 (2d Cir. 2006) (finding, based on the inherently transitory exception, that fact that the three named plaintiffs had either aged out of school system or received special education services

owed to them after complaint filed but before class certified did not render IDEA class action moot); see also Dittimus-Bey, 244 F.R.D. at 288-89 (suspending mootness doctrine in a class action involving claims challenging conditions of confinement, which were brought by plaintiffs who were incarcerated at time complaint but not at time of class certification motion).

In this case, each named plaintiff asserted an unredressed harm at the time the class action Complaint was filed over eight years ago.[5] According to the allegations, each had been denied a FAPE, been harmed by the Newark School District's failure to comply with its child find obligations, and been subjected to unlawful delays in the receipt of needed evaluations, determinations and special services. Since then, two of the named plaintiffs - O.D.J. and A.J.E. - have graduated. A person's ability to pursue a primary and secondary education has, of course, a built-in expiry date - graduation or the date on which the student ages out of the school system by operation of law.[6] Clearly, in a class action involving educational rights, it would be particularly absurd to disqualify the named plaintiffs from representing a class because they had concluded their secondary education. Two others no longer attend Newark schools - M.M. enrolled in a different school district and G.T. exited the system, though its not clear whether her education continued elsewhere. Normally, such unilateral decisions by the aggrieved plaintiff to leave the

---

[5] The Court does feel compelled to address the advanced age of this dispute, which has been ongoing for an unusually long time, even by IDEA standards. The substantial lapse of time between the filing of the Complaint and the instant motion for class certification stems from years of settlement negotiations, during which the parties made incrementally successful efforts to resolve this dispute through agreement rather than trial. They were ultimately unable to reach a comprehensive resolution, and so settlement efforts gave way to the instant motion for class certification.

[6] Under IDEA, a disabled student is entitled to free, appropriate education until he or she reaches age twenty-one. 20 U.S.C. § 1412(2)(b).

district would leave the Court without the ability to order any remedy for that plaintiff.  See, e.g., S.N. v. Old Bridge Township Bd. of Educ., No. 04-517 (SRC), 2006 U.S. Dist. LEXIS 83469, at*9-11 (D.N.J. Nov. 14, 2006) (holding that because plaintiff child moved out of school district after filing suit under the IDEA but before trial on merits, court could not order school district to implement IEP or award plaintiff compensatory education, thus rendering his claims moot).  In this case, however, the Court deals not solely with their individual claims but rather the claims on behalf of a class of children who were allegedly harmed by the school district's systemic non-compliance with IDEA.  For the reasons discussed above, this case fits squarely within the inherently transitory exception to the mootness doctrine.

It may be that the individual named plaintiffs who have graduated or transferred out of district may not be in a position to reap the relief the Court orders should the class claims prevail. However, that is not the question before the Court.  Rather, the Court rules on their adequacy as class representatives.  Defendants have not met their burden of proving inadequacy, nor does the Court itself perceive any impediment to the named Plaintiffs' ability to represent the class and vigorously pursue its interests as required by Rule 23(a)(4).  See In re Fleetboston Financial Corp. Sec. Litig., 253 F.R.D. 315, 329 (D.N.J. 2008) ("Courts are obligated to carefully scrutinize adequacy of representation in all class actions to ensure the forthrightness and vigor with which the class representative would assert and defend the interests of the class members."). The absence of individual claims for compensatory damages and reimbursement obviates this aspect of Defendants' challenge to class certification based on inadequacy.  Plaintiffs' claims, moreover, are not moot.  As it can perceive no antagonism between the interests of the named Plaintiffs and those of the other class members in obtaining the sought declaratory and injunctive

23

relief, the Court is satisfied that the named Plaintiffs can fulfill their responsibility to represent the class adequately.

Thus, for the foregoing reasons, the Court finds that the proposed class has satisfied all of the Rule 23(a) requirements for certification of the IDEA claims.

### B.        Rule 23(b)(2) Analysis

Rule 23(b)(2) authorizes class certification when "the party opposing class certification has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."   Fed.R.Civ.P. 23(b)(2).  The Third Circuit has held that the subsection (b)(2) class "serves most frequently as the vehicle for civil rights action and other institutional reform cases that receive class action treatment.  Indeed, (b)(2) was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons."  Barnes, 161 F.3d at 142 (internal quotations and citations omitted). It has broader application, however, than actions for civil rights violations, and as the Court of Appeals has stated, (b)(2) certification is almost always appropriate in actions seeking primarily injunctive relief.  Baby Neal, 43 F.3d at 58-59.  The court so reasoned in Baby Neal, reversing the district court's denial of (b)(2) certification to a class alleging systemic failure to provide child welfare services).  Id.

Of course, this case, like Baby Neal, alleges systemic failure by Defendants to comply with various IDEA requirements and seeks, among other things, declaratory and injunctive relief on behalf of class.  Plaintiffs apply for an injunction that would order Defendants to perform the following actions:

24

> (1) timely identify, locate and refer; (2) timely evaluate; (3) timely determine eligibility for special education and related services; (4) timely develop IEPs; (5) timely implement IEPs; (6) timely provide special education services; and (7) establish a time frame for the identification, location, referral, evaluation, eligibility determination and provision of special education services to all children who have been denied such services.

(Compl., Relief Requested, at 51.)  The allegations of wrongdoing by Defendants, which concern their non-compliance with the IDEA as to the class of potentially eligible and eligible students, and the injunction sought to remedy those IDEA violations make this case well-suited to (b)(2) certification insofar as the relief would consist of an order compelling Defendants to undertake the actions listed above.   The injunctive relief sought benefits the entire class, which has been subject as a whole to the defendant's alleged unlawful conduct.  Baby Neal, 43 F.3d at 58-59.

Defendants, however, dispute the applicability of Rule 23(b)(2) to any portion of the action on the grounds that the relief sought goes beyond the declaratory and injunctive relief to which that category of maintainable class actions is limited.  It is true that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed.R.Civ.P. 23(b)(2) advisory committee note.  Plaintiffs do not, however, assert a claim for monetary damages in this action, either on behalf of the class or themselves. (As discussed above, a claim for damages under the IDEA is not cognizable, and though not constituting damages but rather equitable monetary relief, reimbursement has been withdrawn as a claimed remedy.)

Rather, the challenge raised by Defendants to class certification under (b)(2) stems from Plaintiffs' pursuit of compensatory education under the IDEA as a class-wide remedy.   Though the IDEA does not expressly provide for the remedy of compensatory education, the Third

Circuit has approved it as an appropriate remedy to cure a child's deprivation of the FAPE, pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii).[7]  Lester H. v. Gilhool, 916 F.2d 865, 872-73 (3d Cir. 1990).  The remedy of compensatory education is meant to provide educational services to make up for the time during which the school district deprived the eligible student of a FAPE.  M.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389, 395 (3d Cir. 1996), cert. denied, 519 U.S. 866 (1996).  It allows a disabled student to continue receiving educational benefits beyond the age of 21 to make up for an earlier deprivation.   Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 249 (3d Cir.1999).

Defendants argue that Plaintiffs' pursuit of compensatory education as a remedy is not "incidental" to the injunctive and declaratory relief they seek, making this action unsuited to certification under Rule 23(b)(2).  They rely on a test articulated by the Fifth Circuit in Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998) and applied by the Third Circuit in its non-published opinion in Barabin v. Aramark Corp., No. 02-8057, 2003 WL 355417, at *2-3 (3d Cir. Jan. 24, 2003).  Plaintiffs counter that the "incidental damages" analysis applied by Defendants has not been adopted by the Third Circuit as the test by which a court should evaluate in the Rule 23(b)(2) context whether monetary damages predominate, that compensatory education is equitable relief not legal monetary relief and that even if the claim for compensatory education were subject to the incidental damages test, it would not destroy the appropriateness of (b)(2) certification of this action.

The Court agrees with Plaintiffs that the Third Circuit has not adopted any particular method of evaluating the predominance of money damages for purposes of determining whether

---

[7] This provision of IDEA, codified as 20 U.S.C. § 1415(e)(2) at the time Lester H. was decided, authorizes a court hearing an IDEA civil action for failure to provide FAPE to "grant such relief as the court determines in appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).

(b)(2) certification is warranted.  See Hohider, 574 F.3d at 198.  It also agrees with Plaintiffs that compensatory education represents relief in the form of equity not damages.  See M.C., 81 F.3d at 395; Somoza v. New York City Dep't of Educ., 538 F.3d 106, 109 n.2 (2d Cir. 2008).  Indeed, the Third Circuit recently reiterated its recognition of the equitable nature of the remedy: "Compensatory education is a retrospective and in kind remedy for failure to provide an appropriate education for a period of time." P.P., 2009 WL 3526372, at *11 (quoting In re The Educational Assignment of J.D., Spec. Educ. No. 1120, at 14 (Pa. Spec. Educ. Appeals Panel 2001), available at http://odr.pattan.net/ODRapps/App1120.pdf).  However, the claim for compensatory education cannot be certified under Rule 23(b)(2) for the class's lack of cohesiveness with respect to this remedy.

As this Court recently observed in Agostino v. Quest Diagnostics, "[u]nlike certification pursuant to Rule 23(b)(3), there are no predominance or superiority requirements for Rule 23(b)(2) certification.  However, courts in the Third Circuit have consistently held that Rule 23(b)(2) class claims must be "cohesive."  Agostino, 256 F.R.D. at 450 (citing Barnes, 161 F.3d at 143; Wetzel, 508 F.2d at 248; In re Unisys Corp. Retiree Medical Benefits Litig., No. 969, 2003 WL 252106, at *3 (E.D.Pa. Feb. 4, 2003)).  Class cohesiveness is, in essence, another way of expressing that the defendant has acted or refused to act on grounds generally applicable to class.  Id. at 456 (citing Barnes v. Am. Tobacco Co., 176 F.R.D. 479, 488 (E.D.Pa. 1997), aff'd, 161 F.3d 127 (3d Cir. 1998)).  Defining it in the negative, cohesiveness cannot be found where an action or claim would present "significant individual liability or defense issues which would require separate hearings for each class member in order to establish defendants' liability."  Id. at 450 (quoting Arch v. Am. Tobacco Co., Inc., 175 F.R.D. 469, 482 (E.D.Pa. 1997)).

The cohesiveness requirement, of particular importance in a (b)(2) class in which unnamed class members will be bound by the action without opportunity to opt out, furthers two important goals: fairness to absent class members and manageability.  Barnes, 161 F.3d at 142-43.  The Third Circuit has stressed the inappropriateness of allowing an action to proceed as a (b)(2) class when it presents significant individual issues:

> In *Santiago*, the court recognized two reasons why courts must determine whether a proposed (b)(2) class implicates individual issues. First, unnamed members with valid individual claims are bound by the action without the opportunity to withdraw and may be prejudiced by a negative judgment in the class action. "Thus, the court must ensure that significant individual issues do not pervade the entire action because it would be unjust to bind absent class members to a negative decision where the class representatives's claims present different individual issues than the claims of the absent members present." Second, "the suit could become unmanageable and little value would be gained in proceeding as a class action ... if significant individual issues were to arise consistently.

Id. at 143 (quoting Santiago v. City of Phila., 72 F.R.D. 619, 628 (E.D.Pa. 1974)).

Though Defendants have argued that this action is ineligible for (b)(2) certification under the rubric of (b)(2)'s limited applicability to injunctive and declaratory relief, the Court notes that their argument at its essence challenges cohesiveness.  As Defendants put it, compensatory education thwarts (b)(2) certification because "analyzing whether compensatory services should be awarded as a result of an untimely referral, evaluation, eligibility determination or placement is a complex, individualized and fact-specific analysis."  (State Def. Br. at 22.)  An award of compensatory education, they maintain, does not flow automatically from a violation of the duty to ensure that students potentially eligible for special services are timely located, identified and evaluated.

The Court agrees.  The entire class was clearly subject to the same alleged failure by Defendants to satisfy the IDEA's requirement of ensuring that children who might be in need of special education services received them.  This class of students claiming harm as a result of Defendants' non-compliance with their child find duties and/or as a result of Defendants' failure to implement an IEP in a timely manner includes both students eligible for special services and those potentially eligible.  Whether any particular class member is in fact entitled to compensatory education would, however, require a student-by-student evaluation of whether that student could be classified with a disability under the IDEA, would be eligible for special services, and failed to receive an appropriate education as a result of Defendants' failure to implement procedures to fulfill the child find duty, to make an eligibility determination and to provide services that would confer a meaningful educational benefit on the child.  Entitlement to the remedy would not flow directly from Defendants' failure to locate, identify and evaluate a potentially eligible student but rather from the deprivation of an appropriate education to a student who is or was in fact disabled under the IDEA.  See P.P., 2009 WL 3526372, at * 10-11 (holding that delay in providing child with evaluation could not, by itself, support compensatory education claim without demonstration that child had been deprived of appropriate education). In other words, compensatory education cannot be awarded absent a finding that a student was deprived of a FAPE in violation of the IDEA, which in turn cannot be known unless a review of the particular circumstances of each child is conducted.  Moreover, even once it is determined that compensatory education is in fact warranted, such remedy is not amenable to a one-size-fits-all award.  The appropriate remedy must take into account the child's unique needs and disabilities as well as the extent to which the Defendants' noncompliance with the IDEA

29

deprived the child of a FAPE.  "A disabled student's right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education." Id. at *10 (quotation omitted).  The individual inquiries which a compensatory education claim would necessarily involve threaten to overwhelm the action and render it unmanageable. See, e.g., Blunt v. Lower Merion Sch. Dist., — F.R.D. —,  No. 07-3100, 2009 WL 2526437, at *7-8 (E.D.Pa. Aug. 19, 2009) (denying certification under (b)(2) for lack of cohesiveness to class seeking, among other things, injunctive relief and compensatory education under IDEA for systemic discrimination against African American students with disabilities).  For these reasons, the Court finds that the IDEA claims to recover compensatory education fail (b)(2)'s cohesiveness requirement and may not be certified.

    For these same reasons, the Court must deny (b)(2) certification in whole to the IDEA claim pled in the Sixth Cause of Action in the Complaint.  That claim alleges that "Defendants' failure to provide eligible children with disabilities with 'compensatory education' to compensate for their failure to identify, locate, refer and evaluate them, determine their eligibility, and develop and implement their IEPs violates IDEA . . ."  (Compl., ¶ 227).  With regard to such alleged wrongdoing, Defendants cannot be said to have acted on grounds generally applicable to the class, "so that final declaratory or injunctive relief is appropriate respecting the class *as a whole*."  Fed.R.Civ.P. 23(b)(2) (emphasis added).  It is certainly not evident from the class definition proposed by Plaintiffs that, as to the entire class, Defendants may be found to have deprived class members of a FAPE and, consequently, violated IDEA by failing to remedy that deprivation with compensatory education.  Determining which class members would be entitled to relief, in whatever form - be it declaratory, injunctive or equitable - for this alleged violation

would require the Court to conduct an individualized inquiry to ascertain those students as to whom Defendants would be liable for failure to provide compensatory education, as alleged in the Sixth Count.  In other words, as to this claim, the class lacks cohesiveness because liability cannot be determined on a classwide basis.

In approaching the (b)(2) certification question from the initial consideration of cohesiveness, without reaching any analysis as to which form of relief predominates, the Court is guided by the Third Circuit's recent opinion in Hohider.  Hohider, supra, 574 F.3d 169.  There, the Third Circuit reversed a district court's certification a class under Rule 23(b)(2) in an action concerning allegations that the defendant had engaged in a pattern or practice of unlawful discrimination against its employees under the Americans with Disabilities Act ("ADA").  Specifically, Hohider involved allegations that the defendant employer's policies with respect to employees who attempted to return to work after medical absences violated the ADA.  Id. at 172.  The district court had certified the class under Rule 23(b)(2) with regard to claims challenging the company's implementation of objectionable policies and permitted classwide pursuit of injunctive and declaratory relief, together with "incidental" money damages.  Id. at 176.  The Third Circuit reversed, finding that classwide liability for unlawful discrimination under the ADA could not be established without conducting significant individualized inquiries concerning whether a class member was a qualified individual with a disability as required by the statute, making the action unsuited to Rule 23(b)(2) certification.  Id. at 186.  The appeals court reasoned that such divergence among the class with respect to the defendant's potential liability under the ADA negated (b)(2)'s requirement that the defendant have acted "on grounds that apply generally to the class, so that final injunctive relief and corresponding declaratory relief is

31

appropriate respecting the class as a whole." Id. at 200.  This finding, the Hohider court held, obviated any need to determine whether the money damages sought by the class predominated over the injunctive and declaratory relief, and thus the Court declined to consider that issue or, relatedly, adopt a particular method for determining the predominance of monetary relief in a proposed Rule 23(b)(2) class.  Id.  It further noted, in dicta, that even were it to agree that liability and injunctive and declaratory relief could be adjudicated on a classwide basis, the damages claims would nevertheless remain ineligible for (b)(2) treatment as necessarily requiring the court to resolve individual questions for each class member.  Id.

While this entire suit is not maintainable as a class action under (b)(2), for reasons discussed above, the Court does find that the class does satisfy those certification requirements as to its claims for injunctive and declaratory relief under the IDEA.  Rule 23(c)(4) permits the Court to take a hybrid approach to class certification.  It authorizes certification of certain issues or claims in an action, as opposed to granting or denying certification to the action as a whole.  Fed.R.Civ.P. 23(c)(4).  The rule may be invoked to certify certain claims under one of the Rule 23(b) categories of maintainable class actions, while certifying others under a different category or, alternatively, allowing them to proceed on an individual basis only.  See, e.g., Wilson, 256 F.R.D. at 491 (D.N.J. Mar. 30, 2009) (certifying portion of § 1983 suit seeking order enjoining defendants from following strip search policies for newly admitted pretrial detainees under Rule 23(b)(2) while certifying damages portion of suit under (b)(3)).  Thus, the Court's conclusion that the pursuit of compensatory education as a remedy for the alleged IDEA violations is incompatible with (b)(2) certification does not preclude the Court from concluding, as it has, that the portion of the action seeking a declaration that Defendants violated the IDEA and an order

32

compelling them to take certain remedial actions may and, indeed, should proceed on a class-wide basis under Rule 23(b)(2).

The Court notes that Plaintiffs have requested that, in the event the Court finds (b)(2) certification inappropriate, the Court certify the class under Rule 23(b)(3). As the Court has already held that the portion of this suit seeking injunctive and declaratory relief may be maintained as a class action under Rule 23(b)(2), it will not consider whether the action, as a whole, could be maintained under Rule 23(b)(3). The Third Circuit has remarked that "an action maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedure complications of (b)(3) which serve no useful purpose under (b)(2). This principle has been widely adopted in the federal courts." Kyriazi v. W. Elec. Co., 647 F.2d 388, 393 (3d Cir. 1981). The injunctive and declaratory relief claims' suitability for (b)(2) treatment thus makes that category the preferred method of adjudicating the claims, regardless of whether (b)(3) might also apply. While the Court may separately certify the compensatory education claim pursuant to the hybrid approach authorized by Rule 23(c)(4), the Court declines to do so because the claim fails to meet the requirements of Rule 23(b)(3). To be maintained as a 23(b)(3) class, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members" and the class action vehicle must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). For reasons discussed above, determining whether an award of compensatory education would be warranted and fashioning an appropriate award would entail individualized inquiries. These issues could not be adjudicated en masse, as neither factual nor legal questions concerning the class members' entitlement to compensatory education

would predominate over the individual questions presented.  In addition, the need to conduct

mini-hearings for each aggrieved class member to resolve the issue of whether compensatory

education was warranted, and if so how much, would defeat the superiority of the class action as

a means of adjudication.

**C.      IDEA Claim for Right to Complaint Resolution Proceeding**

In Count VIII of the Complaint, Plaintiffs assert a cause of action against the State

Defendants for failure to provide an appropriate remedy in response to a complaint resolution

proceeding under the IDEA.  Plaintiffs assert this cause of action pursuant to 20 U.S.C. § 1415(b)

and 20 U.S.C. § 1415(i)(2)(A).  The Court deals with this IDEA claim separately because the

State Defendants have raised an additional challenge to certification of this claim.  They maintain

that regardless of a Rule 23 analysis, the claim cannot be certified because it fails to state a claim

upon which relief can be granted.

Defendants have argued that Third Circuit law recognizing a private cause of action

under the IDEA to challenge an inadequate complaint resolution proceeding is no longer

controlling, following substantive changes to the statutory language on which the legal remedy

was based.  In Beth V. v. Carroll, the Third Circuit held that an aggrieved student had an express

right to sue under the IDEA for a state's failure to comply with federal regulations concerning

complaint resolution procedures.  87 F.3d 80, 86 (3d Cir. 1996).  Then and now, the IDEA set

forth required procedural safeguards.  See 20 U.S.C. § 1415(b).  Defendants contend that, unlike

the statutory requirements at the time Beth V. was decided, the current list of required procedures

under 20 U.S.C. § 1415(b) does not include complaint resolution procedures and that, moreover,

the IDEA procedural requirements provision no longer states that the procedures required "shall

34

not be limited to" those specified.   Defendants' attempt to cast <u>Beth V.</u> as eviscerated by changes to key portions of the IDEA is unavailing because <u>Beth V.</u>'s holding had nothing to do with either an express IDEA requirement that complaint resolution procedures be implemented or the now-excised "not be limited to" language with regard to required procedures.

The holding of <u>Beth V.</u> continues to be governing law in the Third Circuit, and indeed, contrary to Defendants' misreading of the opinion, its reasoning is based on statutory language which continues in effect today.  Specifically, <u>Beth V.</u> examined the private cause of action provision, at the time section 1415(e)(2), and the provision's specific authorization of an action relating to findings and decisions made under subsection (b).  87 F.3d at 85-86.  The court observed that subsection (b)(1)(E), in turn, stated that the state must provide a procedure that gives "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  <u>Id.</u> at 85.  The Third Circuit reasoned that the plaintiffs' claims, which alleged that the state department of education had failed to implement a procedure to investigate and resolve complaints, directly implicated "the provision of a free appropriate public education to such child," and thus fell within the purview of section 1415(b)(1)(E).  <u>Id.</u> at 86.  Thus, the Court held that sections 1415(e)(2) and 1415(b)(1)(E) together authorized the filing of a civil action for the failure to provide adequate complaint resolution procedures.  <u>Id.</u>  Importantly, the key IDEA provisions relied upon by Beth V. remain part of the statute.  In particular, the IDEA authorizes the filing of a civil action for any party aggrieved by findings made under subsection (f), which concerns the due process hearings for complaints received under section 1415(b)(6).  <u>See</u> 20 U.S.C. § 1415(i)(2)(A).  Section

1415(b)(6) sets forth almost verbatim the same procedural requirement which was examined by

<u>Beth V.</u>  It requires "an opportunity for any party to present a complaint with respect to any

matter relating to the identification, evaluation, or educational placement of the child, or the

provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).

The State Defendants have neither presented the Court with any authority that <u>Beth V.</u>

has been overruled nor persuaded the Court that its reasoning is no longer sound.  Accordingly,

the Court rejects their efforts to defeat class certification of the IDEA claim set forth in Count

VIII of the Complaint on grounds that the claim fails to state a cause of action.  For the reasons

given above with regard to all of the IDEA claims generally, the claim for failure to maintain

adequate complaint resolution procedures will be certified under Rule 23(b)(2) as to liability and

as to the injunctive and declaratory relief sought on behalf of the class but not as to the demand

for compensatory education.


### V.   CONCLUSION

For the foregoing reasons, this Court will certify the proposed class pursuant to Federal

Rule of Civil Procedure 23(b)(2) as to liability on the IDEA claims pled in the Complaint's First,

Second, Third, Fourth, Fifth, Seventh and Eighth Causes of Action and as to the declaratory and

injunctive relief sought to remedy those alleged IDEA violations.  Class certification will be

denied, however, as to the Sixth Cause of Action and as to the portion of the action seeking

compensatory education.  Individual claims for reimbursement will be ordered dismissed based

on voluntary withdrawal by Plaintiffs, as will all claims set forth in the Ninth through Twelfth

Counts of the Complaint.  An appropriate form of Order defining the class and embodying the

rulings discussed in this Opinion will be filed herewith.


    s/Stanley R. Chesler    
STANLEY R. CHESLER
United States District Judge


DATED:  December 7, 2009